IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JALISSA R. ALEXANDER, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 2:12-00607-N |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jalissa R. Alexander brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her applications for child insurance benefits[1] and supplemental security income ("SSI"). The parties have consented to the exercise of jurisdiction by the undersigned United States Magistrate Judge for all proceedings in this Court pursuant to 28 U.S.C. § 636(c). (*See* Doc. 21 ("In accordance with provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, including . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record ("R.") (Doc. 12), Alexander's brief (Doc. 15), and the Commissioner's brief (Doc. 17),[2] it is determined

---

[1] The Social Security regulations provide that a claimant who is 18 years of age or older may file an application for child's benefits based on a disability that began before he or she became 22 years old. *See* 20 C.F.R. § 404.350(a)(5). Alexander was born on January 11, 1990, and claimed an onset date of August 17, 2008.

[2] The Court granted Alexander's request to waive oral argument. (*See* Docs.

that the Commissioner's decision denying Alexander benefits should be **AFFIRMED**.[3]

## I. Procedural Background

On April 23, 2009, Alexander filed applications for child insurance benefits and SSI, alleging disability beginning August 17, 2008. Her applications were initially denied. A hearing was then conducted before an Administrative Law Judge on August 18, 2010; that hearing was continued, so that additional evidence could be obtained, and reconvened on December 2, 2010. On December 9, 2010, the ALJ issued a decision finding Alexander was not disabled, and she sought review from the Appeals Council. The Appeals Council issued its decision declining to review the ALJ's determination on August 23, 2012—making the ALJ's determination the Commissioner's final decision for purposes of judicial review, *see* 20 C.F.R. § 404.981—and a complaint was filed in this Court on September 20, 2012.

## II. Standard of Review and Claims on Appeal

In all Social Security cases, the plaintiff bears the burden of proving that he or she is unable to perform his or her previous work. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the plaintiff has met this burden, the examiner must consider the following four factors: (1) objective medical facts and

---

19, 20.)

[3] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 21 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.").)

clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the plaintiff's age, education, and work history. *Id.* Once the plaintiff meets this burden, it becomes the Commissioner's burden to prove that the plaintiff is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Although at the fourth step "the [plaintiff] bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted).

The task for this Court is to determine whether the ALJ's decision to deny plaintiff benefits is supported by substantial evidence. Substantial evidence is defined as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "In determining whether substantial evidence exists, [a court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue,* 370 Fed. App'x 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Bernhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial

3

evidence." *Id.* (citing *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).

On appeal to this Court, Alexander asserts one claim: that the ALJ's decision (in particular, the ALJ's assessment of Alexander's mental residual functional capacity (RFC)) was not supported by substantial evidence because he rejected the opinion of Nina Tocci, Ph.D., who performed a consultative examination of Alexander at the request of the ALJ, instead giving controlling weight to an agency doctor, John Davis, Ph.D., who gave an opinion after reviewing Alexander's medical records, and Dr. M. Hope Jackson, who completed a psychiatric review technique form ("PRTF") in July 2009 based on Alexander's records but without reviewing information on Alexander's ability to function, and despite the fact that neither Dr. Davis nor Dr. Jackson examined or treated Alexander.

### III. Discussion

#### A. The ALJ's Findings.

The ALJ determined that Alexander satisfied the requirements of 20 C.F.R. §404.350(a)(5). He further found that Alexander had not engaged in substantial gainful activity since the alleged onset date and that she suffered from several severe impairments: ovarian cysts, pelvic inflammatory disease, asthma, and borderline intellectual functioning. The ALJ stated, "[t]he record refers to allegations of depression and mood swings, but those complaints have not been documented over any period of 12 consecutive months and the claimant has no history of treatment by a mental health professional for depression, mood swings, or

4

any other mental or emotional impairment." (R. 45.) On that basis, the ALJ found that Alexander did not suffer a 'severe' impairment of either depression or mood swings.

With regard to the consultative mental exam, the ALJ's decision states as follows:

> The Administrative Law Judge arranged for the claimant to be evaluated by Nina E. Tocci, Ph.D. On September 28, 2010, Dr. Tocci noted that the claimant reported a range of daily activities including helping at her father's store, attending classes at a junior college, watching television, going to church, and driving places. The claimant's borderline intelligence was noted, and Dr. Tocci also presented diagnoses of a major depressive disorder and a pain disorder. Dr. Tocci completed a questionnaire on which she indicated that the claimant had marked and extreme mental limitations. (Exhibit 14F). Because that opinion seemed to be at odds with virtually the entire record, the administrative law judge sought the opinion of Dr. John Davis, the eminent psychologist and former President of the Alabama Psychological Association. Dr. Davis emphatically disagreed with Dr. Tocci's ratings and noted that he believed that Dr. Jackson's opinion was consistent with the record. Dr. Davis' opinion and that of Dr. Jackson are accorded greater weight than the opinion of Dr. Tocci whose assessment is given very little weight. Among other factors, Dr. Tocci's inconsistent opinion that the claimant would have an "extreme" limit in the ability to respond to usual work situations, while simultaneously having a mere "mild" limitation in carrying out simple instructions, a very common work situation, undermined the credibility of her report.

(*Id.*)

Dr. Davis testified very briefly at Alexander's second hearing. He stated it was his opinion that Alexander suffered borderline intellectual functioning. With regard to Dr. Tocci's report, he further stated:

> The markings are the ratings are (sic) --- I just don't find any support for them even in her own report. She's in school, she graduated from high school, I think she struggled with her [inaudible] but she's doing

5

regular classes. I'm more in agreement with the RFC that was done by Dr. [inaudible][.4] I just don't see anything in her own report, observations that support the level of limitations that [inaudible].

(R. 62-63.)

The ALJ assigned Alexander the residual functional capacity to perform light work subject to limitations: no climbing ladders, ropes or scaffolds; no work around dangerous machinery, at heights, or around deep water; and, related to her borderline intellectual function, only work which involves understanding, carrying out, and remembering simple one and two step instruction, no production pace work, and only occasional interactions with the general public. (R. 47.)

Other than borderline intellectual functioning, the ALJ makes no reference to any other mental impairment such as depression or mood swings. The ALJ did not mention these additional diagnoses in addressing the severity of her conditions, and did not mention them in the written decision. Thus, the ALJ appears to have discredited not only Dr. Tocci's opinions concerning Alexander's limitations, but her diagnosis of Alexander's other mental conditions.[5]

### B. Medical Records.

In addition to medical records concerning Alexander's physical condition, including abdominal pain and bleeding, as well as pain in her breast and knee, the record contains information concerning the mental limitations from which she

---

[4] The Commissioner states that this was a reference to Dr. Jackson. (Doc. 16 at 6.)

[5] In reviewing the Commissioner's decision, however, the Court's role is not to second guess *how* the ALJ weighs the evidence; the Court's sole concern is whether the Commissioner's decision is supported by substantial evidence.

6

suffers.

On February 8, 2007, at the request of the Alabama Department of Rehabilitation Services, Linda S. Lindman, Ph.D. evaluated Alexander. Dr. Lindman conducted a clinical interview and administered the SAIS-III and WIAT-II tests, for intellectual functioning and achievement. She opined that Alexander suffered from borderline intellectual functioning and assigned a GAF score of 65.

A January 22, 2009 record from Jackson Medical Center indicates that Alexander thought her thyroid medication put her in a bad mood, causing anger problems, but no further reference is made in their notes to this possible side effect or symptom.

On July 16, 2009, M. Hope Jackson, Ph.D., a psychologist working for the agency, completed a PRTF (R. 345-358) and a mental RFC assessment (R. 359-366). According to Dr. Jackson's report, the only medical record concerning Alexander's mental condition available to her was Dr. Lindman's 2007 evaluation. There was also, however, a record from the Clarke County Board of Education, dated August 21, 2007, concerning IQ testing, which Dr. Jackson summarized as follows: "CTONI: NIQ 87; PNIQ 91; GNIQ 85. K-TEA{NU}: Reading Comp 78; Math Comp 73; [B]attery Comp 76." While Dr. Jackson's report indicates that these are the only records she considered, there is a note that Dr. Jackson was unable to reach Alexander to have her complete ADL forms, and thus that "[i]nformation about the claimant's ability to function currently is unavailable . . . . Therefore, the case will be rated with the limitations that would be expected for someone with borderline

7

intellectual functioning."

Dr. Jackson stated that, in her opinion, Alexander was moderately limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to maintain attention and concentration for extended periods; according to this summary, Alexander had no other significant mental limitations. On that same basis, Dr. Jackson provided a functional capacity assessment, which stated that "Claimant has the ability to understand, remember and carry out very short and simple instruction. She can attend for two hour intervals."

And, on that basis, the ALJ accepted the VE's statement that a person with such limitations could find work she could perform available in the national economy, including house cleaner and garment folder. The ALJ thus found that plaintiff was not disabled.

### C. Analysis.

The ALJ continued the first hearing to allow Alexander to be evaluated by two consultative examiners (CEs), one for physical symptoms and the other for mental limitations.[6] But, after ordering the CEs, the ALJ rejected the results of the impartial psychologist's RFC opinion and the rest of the CE results, including, as set forth above, the diagnoses of mood swings and depression. At the hearing, the ALJ

---

[6] It appears from the transcript of that hearing that the ALJ recognized a lack of sufficient information in the record to allow a determination of Alexander's condition; the Social Security regulations provide that an ALJ may order a CE in such circumstances. *See* 20 C.F.R. §404.1517.

8

called a medical expert, Dr. Davis, who stated that he did not think Dr. Tocci's RFC opinions were supported by the medical records. He nonetheless agreed that Alexander had borderline intellectual functioning.

The Commissioner will generally "give more weight to opinions from . . . a source who has examined [the claimant] . . . [and] treating sources," 20 C.F.R. § 404.1527(c)(1)-(2). Dr. Tocci examined plaintiff; Dr. Davis did not. In this case, however, the ALJ gave several reasons for finding that Dr. Tocci's opinions were not entitled to significant weight, including the lack of supporting data in the medical records, as well as a purported conflict between her finding that Alexander suffered an "'extreme' limit in the ability to respond to usual work situations, while simultaneously having a mere 'mild' limitation in carrying out simple instructions, a very common work situation . . . ." (R. 45.) Thus, it appears that the ALJ has expressed valid reasons to reject Dr. Tocchi's opinions. *See, e.g., Mounts v. Astrue*, 479 Fed. App'x 860, 867 (10th Cir. May 9, 2012) ("[T]he other two reasons[—one, the opinion was not supported by the "longitudinal treatment notes" of a licensed clinical social worker who treated the claimant and, two, the opinion was "inconsistent with the record as a whole"—]given by the ALJ are more than adequate for this court to discern why the ALJ rejected [the consultative psychologist's] opinion."); *Ogranaja v. Commissioner of Soc. Sec.*, 186 Fed. App'x 848, 850 (11th Cir. June 5, 2006) (per curiam) ("The ALJ did not err in discounting [the] opinion [rendered after a one-time neurological consultation by Dr. Diaz] regarding Ogranaja's physical capabilities because substantial evidence indicates that it is inconsistent with her examination

9

findings, as well as other examination reports in the record." (citation omitted)).

After rejecting Dr. Tocci's opinions, the evidence on which the ALJ based his mental RFC determination includes: school records of intelligence testing; a 2007 report by Dr. Lindman which included the results of intelligence testing; a notation of irritability, possibly due to drug side effects; an evaluation of the medical records by Hope Jackson, Ph.D., a state agency psychologist; and the minimal hearing testimony offered by Dr. Davis that Alexander suffered borderline intellectual functioning. There may also have been a mention of depression in a record from Dr. Hussein, prior to the diagnosis by Dr. Tocci.

Clearly, the ALJ's mental RFC determination must be supported by substantial evidence, which also requires that the ALJ "provide a sufficient rationale to link such evidence to the legal conclusions reached." *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005); *compare id., with Packer v. Astrue*, Civil Action No. 11–0084–CG–N, 2013 WL 593497, at *4 (S.D. Ala. Feb. 14, 2013) ("[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work." (quoting *Salter v. Astrue*, No. CA 11–00681–C, 2012 WL 3817791, at *3 (S.D. Ala. Sept. 4, 2012))); *see also Hanna v. Astrue*, 395 Fed. App'x 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can

10

review [a plaintiff's] case." (internal citation omitted)); *Ricks v. Astrue*, No. 3:10–cv–975–TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012) ("'The existence of substantial evidence in the record favorable to the Commissioner may not insulate the ALJ's determination from remand when he or she does not provide a sufficient rationale to link such evidence to the legal conclusions reached.' Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow him to explain the basis for his decision." (quoting *Russ*, 363 F. Supp. 2d at 1347)); *Packer*, 2013 WL 593497, at *4 (While "the Eleventh Circuit has declined to impose overly rigid requirements when reviewing disability decisions[,] meaningful review . . . requires [that] ALJs [ ] state with clarity the grounds for their decisions." (internal citations and quotation marks omitted)).

First, Dr. Lindman's evaluation, completed in 2007, prior to Alexander's application or the alleged onset date of her disability, is of limited relevance to Alexander's claim—the report contains a recitation of the test results, but no opinion on the effects of the Alexander's intellectual limitations on her ability to work. Thus, the Court must determine whether the remaining record evidence, which is primarily the opinions of Drs. Jackson and Davis, non-examining sources, provides substantial evidence to support the ALJ's mental RFC determination in light of the Eleventh Circuit's holding that the opinion of a non-examining physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir.

11

1990) (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985)).

*Swindle* remains good law in this Circuit,[7] **but**, under certain circumstances, "substantial evidence supports [an] ALJ's decision to assign great weight to" the opinion of a state agency physician. *Ogranaja*, 186 Fed. App'x at 850. In *Ogranaja*, the court cited *Swindle*, but then noted that, there,

> [t]he ALJ arrived at his decision ***after considering the record in its entirety and did not rely solely on the opinion of the state agency physicians***. The ALJ found that, unlike [the treating physician's] opinions, the expert opinions of the non-examining state agency physicians were supported by and consistent with ***the record as a whole***.

*Id.* at 851 (emphasis added). Further, as explained by the court in *Hogan v. Astrue*, Civil Action No. 2:11cv237–CSC, 2012 WL 3155570 (M.D. Ala. Aug. 3, 2012),

> [i]n isolation, *Swindle* seems to suggest that the opinion of a nonexamining physician cannot be substantial evidence under any circumstances. *Swindle* cites *Broughton* as authority, but that case "held that the opinion of a nonexamining physician is entitled to little weight ***if it is contrary to the opinion of the claimant's treating physician***." *Broughton*, 776 F.2d at 962 (emphasis added). That formulation of the law is consistent with *Lamb v. Bowen*, 847 F.2d 698 (11th Cir. 1988) and *Sharfarz v. Bowen*, 825 F.2d 278 (11th Cir. 1987). Thus, the court concludes that the opinion of a non-examining physician who has reviewed medical records may be substantial evidence if it is consistent with the well-supported opinions of examining physicians ***or other medical evidence in the record***.

*Id.* at *5 (citations modified and second emphasis added). In *Hogan*, the court ultimately affirmed the ALJ's decision, concluding, "[a]fter a careful review of all the

---

[7] *See, e.g., O'Bier v. Commissioner of Soc. Sec. Admin.*, 338 Fed. App'x 796, 798 (11th Cir. July 2, 2009) (per curiam) (citing *Swindle* but also noting that an ALJ "may consider the reports and assessments of state agency physicians as expert opinions" (citing 20 C.F.R. § 416.927(f)(2)(i))).

12

medical records, . . . that the ALJ's residual functional capacity [was] consistent with ***the medical evidence as a whole*** as well as Hogan's testimony about her abilities." *Id.* at \*6 (emphasis added).

Similarly, here, the ALJ "agreed with . . . the findings of the State agency [Dr. Jackson] with respect to [Alexander's] mental capacities" after noting that the medical expert called to testify at the hearing, Dr. Davis, agreed with those findings. (R. 48.) The ALJ then "incorporated" the findings as to Alexander's mental capacities into his RFC determination, which the ALJ also noted was "supported by the medical history of record, the minimal abnormal test and examination findings of record, the sporadic nature of [Alexander's] treatment, . . . and by [Dr. Davis's] testimony." (R. 48-49.)

Based on this, and in light of *Ogranaja*, the Court cannot say that the decision to adopt Dr. Jackson's opinion is not based on substantial evidence. *See, e.g., Wilkinson v. Commissioner of Soc. Sec. Admin.*, 289 Fed. App'x. 384, 386 (11th Cir. Aug. 20, 2008) (per curiam) ("The ALJ did not give undue weight to the opinion of the non-examining state agency physician because he did not rely solely on that opinion. The ALJ considered the opinions of other treating, examining, and non-examining physicians; rehabilitation discharge notes indicating improvement; and Wilkinson's own disability reports and testimony." (citing *Broughton*, 776 F.2d at 962)); *cf. Davis v. Astrue*, Civil Action No. 2:08CV631–SRW, 2010 WL 1381004, at \*5 (M.D. Ala. Mar. 31, 2010) (holding that "the ALJ properly assigned 'great weight'" to the opinion a non-examining physician because that opinion was "supported by

13

and consistent with the record as a whole[,] unlike the opinion of plaintiff's treating sources . . . . The opinion of a non-examining physician alone does not constitute substantial evidence. *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990). However, ***where the ALJ has discounted the opinion of an examining source properly, the ALJ may rely on the contrary opinions of non-examining sources***." (emphasis added and some citations omitted)).

Based on the law in this Circuit, the Court must conclude that the ALJ properly relied on the opinions of Dr. Jackson and that these opinions provide the necessary linkage regarding the plaintiff's ability to perform, in particular, the mental requirements of work. Therefore, the ALJ's decision provides this Court with a sufficient rationale to review his conclusions and conclude that the decision is supported by substantial evidence.

## IV. Conclusion

Accordingly, it is **ORDERED** that the decision of the Commissioner of Social Security denying Alexander benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the 12th day of September, 2013.

                                  */s/ Katherine P. Nelson*
                                  **KATHERINE P. NELSON**
                                  **UNITED STATES MAGISTRATE JUDGE**